**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlton J. Henderson; Vanessa J. Henderson,<br><br>        Plaintiffs,<br><br>vs.<br><br>Chase Home Finance, LLC,<br><br>        Defendant. | No. CV 09-2461-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Chase Home Finance LLC's Motion to Dismiss (Doc. # 10); and Plaintiffs' Motion for Preliminary Injunction (Doc. # 16). For the reasons that follow, the Court grants in part and denies in part Defendant's motion, and grants Plaintiffs' request for a preliminary injunction.

**I.  Background**

In August 2006, Plaintiffs obtained financing for their home by executing a promissory note and deed of trust with Defendant. The payment schedule under the note was prepared to change in five years from the date of the inception of the note. In February 2009, Plaintiffs contacted Defendant to inquire about refinancing the mortgage in an effort to obtain a lower interest rate. Defendants represented to Plaintiffs that because the mortgage payments were current and no equity was then present in Plaintiffs' home, no mortgage refinancing programs were available to Plaintiffs. Plaintiffs allege that at no point were they

1 delinquent or otherwise late with their mortgage payments.

2       In May 2009, Defendants contacted Plaintiff and offered a temporary forbearance of
3 Plaintiffs' loan payments. In the forbearance offer, Defendant represented that Plaintiffs'
4 mortgage account had been reported to the credit bureaus as delinquent. The forbearance
5 agreement directed Plaintiffs to make payments in the amount of $1,085 per month–a
6 significant decrease from Plaintiffs' then current monthly mortgage payment–until a
7 permanent modification of the loan could be completed. While Plaintiffs disputed that they
8 had ever been late on a mortgage payment, Plaintiffs allege that Defendant advised them to
9 adhere to the terms of the forbearance agreement, and it would not affect their loan status or
10 credit.

11       Plaintiffs' June and July mortgage statements showed that Plaintiffs were being
12 assessed late fees and penalties. Plaintiffs contacted Defendant and were informed that the
13 late fees were simply a computer generated error, and that Plaintiffs should continue making
14 the forbearance payments. In August 2009, Plaintiffs received an alert from a credit
15 reporting bureau that Plaintiffs' credit score had decreased by sixty points as a result of
16 Defendant's adverse reporting of a thirty-day late mortgage payment. Plaintiffs allege that
17 Defendant never disclosed that the forbearance agreement "would trigger late fees, penalties,
18 cause loan default and result in negative consumer information to the major credit bureaus
19 costing them lost access to $50,000 in capital." (Doc. # 1, Ex. 1, p. 7, ¶ 22.)

20       Plaintiffs filed suit in Maricopa County Superior Court. Defendant timely removed
21 to this Court. Defendant now seeks to have Plaintiffs claims in Counts I, IV, V, VI, VII, and
22 VIII dismissed. Plaintiffs seek a preliminary injunction to enjoin Defendant from: refusing
23 to properly apply Plaintiffs' mortgage payments; assessing unjustified late fees to Plaintiffs;
24 making false reports to credit reporting agencies concerning Plaintiffs' mortgage payments;
25 failing to provide Plaintiffs with an accurate monthly mortgage statement; and refusing to
26 reinstate Plaintiffs' online access to their mortgage account.

27 ///
28 ///

1  **II.    Motion to Dismiss**

2  *A.    Legal Standard*

3    To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet
4  the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short
5  and plain statement of the claim showing that the pleader is entitled to relief," so that the
6  defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*
7  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
8  (1957)).

9    To survive a motion to dismiss, a complaint must contain sufficient factual matter,
10 which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v.*
11 *Iqbal*, 129 S.Ct. 1937, 1949 (2009). Facial plausibility exists if the pleader pleads factual
12 content that allows the court to draw the reasonable inference that the defendant is liable for
13 the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility
14 requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.

15   In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts
16 alleged in the complaint in the light most favorable to the drafter of the complaint and the
17 Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*,
18 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true
19 a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286
20 (1986).

21 *B.    Count I*

22   In their first claim for relief, Plaintiffs allege that Defendant fraudulently concealed
23 pertinent facts pertaining to the forbearance agreement. Arizona courts recognize the tort of
24 fraudulent concealment, and define it as follows: "[o]ne party to a transaction who by
25 concealment or other action intentionally prevents the other from acquiring material
26 information is subject to the same liability to the other, for pecuniary loss as though he had
27 stated the nonexistence of the matter that the other was thus prevented from discovering."
28 *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension*

*Trust Fund*, 38 P.3d 12, 34 (Ariz. 2002) (quotation omitted).

Defendant argues that Plaintiffs have failed to allege that it engaged in deceptive acts intended to hide or conceal information from Plaintiffs. The Court disagrees. Plaintiffs allege Defendant concealed that the forbearance agreement would result in late fees and the lowering of Plaintiffs' credit score. Plaintiffs further allege that it contacted Defendant over concern that Plaintiffs' monthly mortgage statements contained late fees and penalties, but Defendant assured Plaintiff that such statements were only computer generated errors. Plaintiff alleges that upon voicing such concerns, Defendant encouraged Plaintiff to continue under the forbearance agreement and to "not worry." The Court finds that, at this stage of the proceedings, Plaintiffs have plead enough facts to allege that Defendant intentionally prevented Plaintiffs from acquiring material information. Defendant's motion to dismiss on Count I fails.

C.   *Count IV*

In Count IV, Plaintiffs allege a violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 *et seq*. "The elements of a private cause of action for statutory fraud are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979). Defendant argues that Plaintiffs failed to allege that any particular statement was false or that a misrepresentation was made. However, Plaintiffs allege that in the forbearance offer, Defendant misrepresented that Plaintiffs' mortgage account was delinquent and that the forbearance agreement would prevent foreclosure proceedings. When Plaintiffs contacted Defendant over a concern that Plaintiffs mortgage statements reflected late fees, Defendant responded by stating that they were mere computer errors and that Plaintiffs should continue making the forbearance payments. Plaintiffs also allege that Defendant intentionally omitted the material fact that the forbearance agreement would result in a decrease in Plaintiffs' credit scores. Plaintiffs have adequately alleged misrepresentation within the meaning of the ACFA.

Defendant also argues that Plaintiffs failed to allege any sale or advertisement of merchandise. Loan transactions constitute a "sale" within the meaning of the ACFA. *Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781, 783 (Ariz. Ct. App. 1985) ("While a loan is ordinarily not thought of as a sale, in fact it is the sale of the present use of money on a promise to repay in the future."). Plaintiffs' allegations concerning the forbearance agreement satisfy the sale requirement under the ACFA. Moreover, Plaintiffs' allegations concerning the unsolicited forbearance offer constitute advertising within the meaning of the ACFA. *Id.* at 783-84.

Defendant next argues that Plaintiffs have not plead any consequent and proximate injury. Plaintiffs, however, allege that their credit scores dropped as a result of the forbearance agreement; and, as a result of the drop in their credit scores, Plaintiffs allege that a line of credit in the amount of $50,000, which was previously available, became unavailable. Plaintiffs also allege that they have been forced to pay late fees and other penalties resulting from the forbearance agreement. Plaintiffs have sufficiently plead consequent and proximate injury.

As such, the Court finds that Plaintiffs have properly plead a cause of action under the ACFA. Defendant's motion to dismiss on this claim fails.

*D.     Count V*

In Count V, Plaintiffs allege a claim for actual fraud. In alleging a claim for fraud, all circumstances constituting the fraud must be plead with particularity. FED. R. CIV. P. 9(b). "The particularity requirement of Rule 9(b) requires claims for fraud to be pled with sufficient specificity to allow a defendant an opportunity to defend against the claim, rather than simply deny they have done anything wrong." *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001) (quotation omitted). In Arizona, fraud consists of the following elements:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

- 5 -

*Moore v. Meyers*, 253 P. 626, 628 (Ariz. 1927). In addition, Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Defendant argues that Plaintiffs have failed to properly allege the time, place, or substance of any alleged misrepresentations by Defendant. The Court disagrees. Plaintiffs alleged the specific date of each contact with Defendant–either in the form of Plaintiffs telephoning Defendant or Defendant mailing items to Plaintiff–where the alleged misrepresentations were made. Although the place was not specifically alleged, the place of the allegations is not material to Plaintiffs claims. And, most importantly, the substance of the alleged misrepresentations have been plead with particularity, as repeatedly discussed above.

Defendant also argues that Plaintiffs fail to specifically allege the identity of the representative who made the representations for Defendant. However, Defendant fails to suggest how the absence of the representative's identity at this stage of the proceedings precludes Defendant from defending against Plaintiffs' fraud claims. Moreover, this case does not present the situation where some independent third party made representations that are being imputed to Defendant. Rather, one of Defendant's own representatives made the alleged statements. The failure to specifically identify the persons with whom Plaintiffs spoke when telephoning Defendant is not fatal at this stage of the proceedings.

Defendant next asserts that Plaintiffs did not actually rely upon any statements by Defendant. However, Plaintiffs allege that Defendant represented that Plaintiffs' mortgage account was delinquent, and that such representations induced them into entering into the forbearance agreement. Regardless of how much "Plaintiffs questioned everything," as Defendant asserts, Plaintiffs were induced into entering the forbearance agreement by Defendant's representations, and Plaintiffs were repeatedly assured that the late fees were simply a computer error. Plaintiffs have adequately pled reliance to sustain a fraud claim.

The Court finds that Plaintiffs have pled fraud with sufficient particularity to satisfy

Rule 9(b) and Rule 12(b)(6).

*E.    Count VI*

In Count VI of their complaint, Plaintiffs allege that Defendant committed constructive fraud. In order to prevail on a claim for constructive fraud, Plaintiffs must show that: (1) the parties had a fiduciary relationship that gave rise to a legal or equitable duty; (2) Defendant breached that duty; (3) the breach tends to deceive others, violates public or private confidences, or injures public interests; and (4) the breach induced detrimental and justifiable reliance. *Dawson v. Withycombe*, 163 P.3d 1034, 1057-58 (Ariz. Ct. App. 2007).

Defendant argues that Plaintiffs' claim for constructive fraud must fail because there is no fiduciary relationship between the parties. Plaintiffs do not respond to this argument, and their failure to do so serves as an independent basis upon which to grant Defendant's motion to dismiss on Count VI. *See* LRCiv 7.2(i). In any event, even in addressing the merits of Defendant's contention, the Court agrees that dismissal of Plaintiffs' claim for constructive fraud is proper. Arizona courts have held that ordinarily there is no fiduciary relationship between a bank and its customer. *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992) ("It is well settled in Arizona that the relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor.") (quotations omitted). The Court finds nothing in the case law to suggest that the same principles do not apply in the context of a lender and borrower. The Court finds this conclusion to be particularly true as Arizona courts have likened the bank/customer relationship to that of a debtor/creditor, which is essentially the nature of a lender/borrower relationship.

As such, the Court grants Defendant's motion as to Plaintiffs' Count VI.

*F.    Count VII*

In Count VII of their complaint, Plaintiffs allege a tortuous interference with contract on the part of Defendant. Defendant argues that Plaintiffs cannot assert such a claim because a tortuous interference with contract claim requires that a defendant intentionally interfere with the contract between the plaintiff and a third party. *See Ares Funding, L.L.C. v. MA*

*Maricopa, L.L.C.*, 602 F.Supp.2d 1144, 1149 (D. Ariz. 2009) ("The tort of tortious interference with contract requires, by definition, that a third party have interfered in the contractual obligations of one or both of the contracting parties."). Plaintiffs do not dispute this legal principle, but assert instead that they have alleged that Defendant interfered with the contract between Plaintiffs and the actual owner of Plaintiffs' note, Freddie Mac. However, in reviewing Plaintiffs' complaint under Count VII, it is clear that Plaintiffs are alleging that a contractual relationship exists between Plaintiffs and Defendant, and that Defendant interfered with this contract. (See Complaint at ¶¶ 72-76.) Because Plaintiffs have not properly alleged that Defendants interfered with a contract between Plaintiffs and a third party, Plaintiffs claim for tortuous interference with contract under Count VII fails.

G.     *Count VIII*

In Count VIII of their complaint, Plaintiffs allege a claim for negligent misrepresentation. Defendant first argues that Plaintiffs' claim is barred by the economic loss doctrine. The Arizona Supreme Court had occasion recently to discuss the economic loss doctrine, and in so doing, attempted to steer the lower courts in Arizona from the "overly broad" formulation that "the economic loss doctrine 'bars a party from recovering economic damages in tort unless accompanied by physical harm.'" *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance*, 223 P.3d 664, 667 (Ariz. 2010) (quoting *Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003). The Court further stated that formulating the economic loss doctrine in such a way "conflates two distinct issues: (1) whether a contracting party should be limited to its contract remedies for purely economic loss; and (2) whether a plaintiff may assert tort claims for economic damages against a defendant absent any contract between the parties." *Design Alliance*, 223 P.3d at 667. The Court found that the doctrine should only apply to the first of these two situations. *Id.* The Court summarized the economic loss doctrine in Arizona as referring "to a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property."

With these principles in mind, the Court finds that the economic loss doctrine does

1  not bar Plaintiffs' negligent misrepresentation claim. Even assuming Plaintiffs and
2  Defendant are contracting parties within the meaning of the economic loss doctrine, Plaintiffs
3  are not seeking contract remedies in any of its claims, let alone its claim for negligent
4  misrepresentation. Indeed, the very definition of "economic loss" within the economic loss
5  doctrine does not apply in this case. "'Economic loss,'as we use the phrase, refers to
6  pecuniary or commercial damage, including any decreased value or repair costs for a product
7  or property that is itself the subject of a contract between the plaintiff and defendant, and
8  consequential damages such as lost profits. *Id.* Plaintiffs are not seeking any damages that
9  are themselves the subject of the contract between the parties. Rather, Plaintiffs are seeking
10 damages for their lowered credit scores, loss of access to an otherwise available line of credit,
11 and for late fees assessed as a result of the forbearance agreement. These are not remedies
12 resulting from the parties contract that are cloaked to avoid the economic loss rule. As such,
13 the economic loss doctrine does not preclude Plaintiffs' negligent misrepresentation claim.

14 Defendant next argues that Plaintiffs have failed to properly allege the elements of a
15 claim for negligent misrepresentation. Arizona has adopted the Restatement view with
16 respect to the tort of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

21 *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987)
22 (quoting RESTATEMENT (SECOND) OF TORTS § 552). Plaintiffs have adequately pled a claim
23 for negligent misrepresentation.

24 Plaintiffs allege that Defendant, through course of its business, represented that
25 Plaintiffs were late on their mortgage payments, that it was necessary to enter into the
26 forbearance agreement in order to avoid foreclosure, and that the forbearance agreement
27 would not affect their credit rating. Plaintiffs further allege that, based upon these
28 representations, they entered into the forbearance agreement and continued making payments

- 9 -

under the forbearance agreement based upon Defendant's repeated representations. Plaintiffs' allegations satisfy a Rule 12(b)(6) standard.

### III. Preliminary Injunction

Plaintiffs seek a preliminary injunction to enjoin Defendants from: refusing to properly apply Plaintiffs' mortgage payments; assessing unjustified late fees to Plaintiffs; making false reports to credit reporting agencies concerning Plaintiffs' mortgage payments; failing to provide Plaintiffs with an accurate monthly mortgage statement; and refusing to reinstate Plaintiffs' online access to their mortgage account. Plaintiffs filed their motion for a preliminary injunction on April 12, 2010. Defendant filed its response on May 10, 2010, well outside the time for filing such a response. Defendant failed to even acknowledge that its response to Plaintiffs' motion for preliminary injunction was untimely, let alone offer a justification for the late filing. Because Defendant filed an untimely response without seeking leave of Court, the Court will strike Defendant's response currently found at Doc. # 26. Further, because there is not a timely response in opposition to Plaintiffs' motion for preliminary injunction, the Court finds such a failure as consent to the granting of the motion under LRCiv. 7.2(i).

### IV. Conclusion

For the reasons discussed above, Plaintiffs have satisfied a Rule 12(b)(6) standard with respect to Counts I, IV, V, and VIII. However, the Court grants Defendant's motion to dismiss with respect to Counts VI and VII.

Accordingly,

**IT IS ORDERED** that Defendant Chase Home Finance LLC's Motion to Dismiss (Doc. # 10) is granted in part and denied in part as follows: the motion is denied with respect to Counts I, IV, V, and VIII; and the motion is granted with respect to Counts VI and VII.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall strike Defendant's Response in Opposition to Application for Preliminary Injunction (Doc. # 26) because it is untimely and was filed without leave of Court.

**IT IS FURTHER ORDERED** that because Defendant has failed to timely respond

to Plaintiffs' Motion for Preliminary Injunction (Doc. # 16), the Court finds such a failure as consent to the granting of the motion. Accordingly, under LRCiv. 7.2(i), the Court grants Plaintiffs' motion for preliminary injunction (with an Order on the preliminary injunction to follow).

**IT IS FINALLY ORDERED** vacating the hearing currently set for June 28, 2010 at 11:00 A.M.

DATED this 13th day of May, 2010.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge