**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlton J. Henderson and Vanessa J. Henderson, husband and wife, | No. CV 09-2461-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| Chase Home Finance, LLC, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 135). The Court now rules on the Motion.

## I.  BACKGROUND

In August 2006, Plaintiff Carlton Henderson obtained financing for the property located at 30647 N. 42nd Place, Cave Creek, Arizona (the "Property") by executing a promissory note in the amount of $303,050 (Doc. 136 at ¶ 1).  The promissory note was secured by a Deed of Trust on the Property.  (*Id.*).  Vanessa Henderson did not sign the promissory note, but did sign the Deed of Trust.  (Doc. 138 at ¶ 2; Doc. 136 at Exhibit B).  Thereafter, the Property was transferred by Warranty Deed to Carlton and Vanessa Henderson as Community Property with Right of Survivorship.  (Doc. 138 at ¶ 2; Doc. 137-3 at Exhibit 1).

Sometime around August 2006, Mrs. Henderson established Arizona Legal Specialists ("ALS") as a limited liability company with the Arizona Secretary of State.  (Doc. 137-2 at

¶ 2; Doc. 136 at ¶ 15).  Mrs. Henderson signed all of the documents filed with the Arizona Secretary of State.  (Doc. 137-2 at ¶ 2).  Mr. Henderson was not a member or manager of ALS.  (Doc. 136 at ¶ 15).  Nonetheless, ALS was managed and operated with Mr. Henderson's credit, community monies, and treated as a sole proprietorship on the couple's joint tax returns, which listed Mr. Henderson as the primary earner.  (Doc. 137-2 at ¶ 2).

In January 2009, the Hendersons expanded their business into Southern California, where they operated a limited liability company under the name California Legal Group ("CLG").  (Doc. 137-2 at ¶ 17; Doc. 136 at ¶ 18).  CLG was funded with community resources.  (Doc. 137-2 at ¶ 17).  The Hendersons purchased equipment, hired paralegals, and leased offices for employee access and training for CLG.  (Doc. 137-2 at ¶ 18).  The Hendersons also purchased licenses, bonds, made payments to paralegals, and spent money on marketing services. (Doc. 137-2 at ¶ 18).  Nonetheless, CLG never started doing business and never received any income.  (Doc. 136 at ¶¶ 19-20).  The Hendersons paid their mortgage and numerous personal expenses out of their ALS and CLG business checking accounts.   (Doc. 136 at ¶ 27; Doc. 137-2 at ¶ 3).

In late 2008 and early 2009, Mr. Henderson inquired as to whether he could refinance his loan with Chase and was told that no such options were available to him at that time. (Doc. 136 at ¶¶ 3-4; Doc. 138 at ¶¶ 3-4).  In May 2009, Chase contacted Mr. Henderson and told him that he was pre-approved for a loan modification and that a three month temporary modification would be mailed to him.  (Doc. 138 at ¶ 5; Doc. 137-1 at ¶ 3).  Mr. and Mrs. Henderson discussed the possible modification and agreed to consider the offer when it arrived. (Doc. 137-a at ¶ 3).  A few days later, Chase sent Mr. Henderson a forbearance offer and trial loan modification application packet.  (Doc. 136 at ¶ 5).  When the packet arrived, it included information that Chase had reported the mortgage account to one or more of the major credit bureaus as delinquent or late.  (Doc. 137-1 at ¶ 4).  Before signing the agreement, Mr. Henderson and his wife agreed to discuss this reporting with Chase.  (Doc. 137-1 at ¶ 4).

Mr. Henderson then called Chase and asked why the forbearance indicated that he was

delinquent and being reported to credit agencies.  (Doc. 137-1 at ¶ 5).  The Chase representative informed Mr. Henderson that his payments were not late and not reported to any credit bureau.  (Doc. 137-1 at ¶ 6).  The Chase representative assured Mr. Henderson that, as long as he followed the terms of the forbearance, his mortgage would remain in good standing and his credit would not be affected.  (Doc. 137-1 at ¶ 6).

Mr. Henderson accepted the offer and, over the next several months, sent in documents to try to obtain a loan modification from Chase.  (Doc. 136 at ¶ 6).  Mr. Henderson made all of the payments due under the forbearance agreement, believing it to be a trial modification of his loan.  (Doc. 138 at ¶ 7).  In mid-June, Mr. Henderson received a late mortgage account statement from Chase that informed him that late fees and penalties had been assessed.  (Doc. 137-5 at ¶ 9).  Mr. Henderson contacted customer services and was told that it was a computer generated error and that he should not worry.  (Doc. 137-5 at ¶ 9).

Thereafter, Mr. and Mrs. Henderson received notice that their credit lines were being decreased and one credit line was frozen and the account closed.  (Doc. 137-1 at ¶ 10).  A Chase representative again informed Mr. Henderson that the forbearance had been granted, so the mortgage account information would not affect the loan status, the pending modification, or his credit.  (Doc. 137-1 at ¶ 11).  At the end of July 2009, Mr. Henderson received a mortgage statement from Chase, which reflected that late charges and other fees had accumulated due to the forbearance agreement.  (Doc. 137-1 at ¶ 14).  When Mr. Henderson called, he was again told that the statement was computer generated and not to worry as long as he made timely forbearance payments.  (Doc. 137-1 at ¶ 14).

In August 2009, Mr. Henderson received a letter from Chase stating that he was in default on his loan because he failed to make the required payments.  (Doc. 137-1 at ¶ 15).  The following day, Mr. Henderson spoke with a Chase representative who advised him to ignore the default notice because there was a backlog of modification requests and to continue to make the forbearance payments.  (Doc. 137-1 at ¶ 17).  A few days later, Mr. Henderson received an alert from Equifax Information Systems ("Equifax"), which informed

1  him that his credit score had decreased by sixty points and identified Chase Home Mortgage,

2  LLC as the responsible party.  (Doc. 137-1 at ¶ 18).  Chase refused to correct the negative

3  reporting.  (Doc. 137-1 at ¶¶ 20-21).

4      Plaintiffs filed suit in Maricopa County Superior Court.  Defendant timely removed

5  to this Court.  In their Complaint, Plaintiffs made claims of: fraudulent concealment (Count

6  I), libel (Count II), Violations of the Fair Credit Reporting Act (Count III), Violations of

7  Arizona Revised Statutes section 44-1521 (Count IV), Fraud (Count V), Constructive Fraud

8  (Count VI), tortious interference with contract (Count VII), and negligent misrepresentation

9  (Count VIII).  Plaintiffs also sought a preliminary injunction to prevent Chase from

10  continuing to falsely report that their mortgage was delinquent.  Defendant then moved to

11  dismiss Counts I, IV, V, VI, VII, and VIII of Plaintiffs' Complaint.  The Court granted

12  dismissal of Counts VI (Constructive Fraud) and VII (tortious interference with contract) and

13  denied the motion to dismiss in all other respects.  The Court also granted Plaintiffs' Motion

14  for Preliminary Injunction.

15      Defendant now moves for summary judgment on the remaining counts in Plaintiffs'

16  Complaint.  Defendant claims it is entitled to summary judgment on all claims asserted by

17  Mrs. Henderson because she does not have standing to allege the claims asserted against

18  Chase because Mrs. Henderson was not a borrower with Chase.  Defendant further claims

19  that it is entitled to summary judgment on all claims asserted by Mr. Henderson because (1)

20  Mr. Henderson has not presented evidence of causation and (2) Mr. Henderson's damages

21  are too speculative.  The Court will address each of Defendant's arguments in turn.

22  **II.    LEGAL STANDARD**

23      Summary judgment is appropriate when "the movant shows that there is no genuine

24  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

25  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must

26  support that assertion by . . . citing to particular parts of materials in the record, including

27  depositions, documents, electronically stored information, affidavits, or declarations,

28  stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that

1   materials cited do not establish the absence or presence of a genuine dispute, or that an

2   adverse party cannot produce admissible evidence to support the fact." *Id.* at

3   56(c)(1)(A)&(B).  Thus, summary judgment is mandated "against a party who fails to make

4   a showing sufficient to establish the existence of an element essential to that party's case, and

5   on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

6   317, 322 (1986).

7        Initially, the movant bears the burden of pointing out to the Court the basis for the

8   motion and the elements of the causes of action upon which the non-movant will be unable

9   to establish a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the

10  non-movant to establish the existence of material fact.  *Id.*  The non-movant "must do more

11  than simply show that there is some metaphysical doubt as to the material facts" by

12  "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"

13  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting

14  Fed.R.Civ.P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the

15  evidence is such that a reasonable jury could return a verdict for the nonmoving party.

16  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the summary judgment

17  context, the Court construes all disputed facts in the light most favorable to the non-moving

18  party.  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

19       **III.    ANALYSIS**

20            **A.    Standing**

21       Defendant first argues that Mrs. Henderson does not have standing to bring any of the

22  claims because all of Chase's actions were directed toward Mr. Henderson and the loan that

23  Mr. Henderson had with Chase.  In response, Plaintiffs' concede that Mrs. Henderson does

24  not have standing to assert a defamation claim against Chase (Count II), but argue that she

25  does have standing to assert claims for fraudulent concealment, violations of the Fair Credit

26  Reporting Act, Violations of Arizona Revised Statutes section 44-1521, Fraud, and Negligent

27  Misrepresentation.  The Court will analyze whether Mrs. Henderson has standing to assert

28  any or all of  these claims against Chase.

1

              **i.**    **Fraudulent Concealment (Count I)**; **Violations of Arizona Revised Statutes section 44-1521(Count IV); Fraud (Count V); Negligent Misrepresentation (Count VIII)**

2

3        Plaintiffs claim that Defendant fraudulently concealed pertinent facts pertaining to the

4  forbearance agreement.  Arizona courts recognize the tort of fraudulent concealment, and

5  define it as follows: "[o]ne party to a transaction who by concealment or other action

6  intentionally prevents the other from acquiring material information is subject to the same

7  liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter

8  that the other was thus prevented from discovering."  *Wells Fargo Bank v. Ariz. Laborers,*

9  *Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 34 (Ariz. 2002)

10  (quotation omitted).

11        Defendant argues that Plaintiffs have not alleged that Chase fraudulently concealed

12  information from Mrs. Henderson and, thus, she does not have standing to assert a claim for

13  fraudulent concealment.  In response, Plaintiffs argue that (1) Mrs. Henderson did have

14  conversations with Chase regarding Mr. Henderson's loan, and (2) because Chase was aware

15  that Arizona is a community property state and that Mrs. Henderson's community interest

16  in the property was encumbered by Mr. Henderson's loan, any information that was

17  fraudulently concealed from Mr. Henderson was also fraudulently concealed from Mrs.

18  Henderson.

19        First, Plaintiffs have failed to state with sufficient particularity that any information

20  was fraudulently concealed from Mrs. Henderson in any conversations Mrs. Henderson may

21  have directly had with Defendant's representatives.  However, it is undisputed that Mr.

22  Henderson consulted with Mrs. Henderson, based on the information that he learned from

23  Chase, in deciding whether to agree to a loan modification or forbearance.  It is undisputed

24  that any decision Mr. Henderson made with regard to his loan could affect Mrs. Henderson's

25  community interest in the Property.  It is undisputed that, based on the information provided

26  by Chase, Mr. and Mrs. Henderson decided together to enter into the loan

27  modification/forbearance.  Further, it is undisputed that Chase required Mrs. Henderson to

28  sign the Deed of Trust so that Mr. Henderson's loan was secured by the Property in its

1    entirely, as Arizona is a community property state.

2         Finally, as discussed in more detail below, Mrs. Henderson has alleged that she

3    suffered a pecuniary loss based on Chases's fraudulent concealment of information regarding

4    the loan modification/forbearance.  Accordingly, Mrs. Henderson has standing to assert a

5    claim of fraudulent concealment (Count I).

6         For the same reasons that Mrs. Henderson has standing to assert a claim for fraudulent

7    concealment, the Court finds that, under the circumstances of this case, Mrs. Henderson also

8    has standing to assert claims against Defendant for violations of Arizona Revised Statutes

9    section 44-1521 (Count IV),[1] Fraud (Count V), and Negligent Misrepresentation (Count VIII).

10        As discussed above, Mr. Henderson consulted with Mrs. Henderson before agreeing

11   to the loan modification/forbearance based on the information provided and not provided by

12   Defendant.  Mr. Henderson knew that Mrs. Henderson's interest in the property could be

13   significantly affected by any changes made to the loan that was secured by the property.

14   Chase also knew that Mrs. Henderson's interest could be affected by any changes made to

15   the loan that was secured by the property.  Defendant has presented no evidence that Mr.

16   Henderson would have accepted the loan modification/forbearance without his wife's

17   approval and, in fact, Mr. Henderson did not accept the loan modification/forbearance

18   without his wife's approval.  Further, Mrs. Henderson relied on the information given and

19

20        [1] The Arizona Consumer Fraud Act provides a private cause of action for

21

22        [t]he act, use or employment by any person of any deception,
          deceptive act or practice, fraud, false pretense, false promise,
23        misrepresentation, or concealment, suppression or omission of
          any material fact with intent that others rely upon such
24        concealment, suppression or omission, in connection with the
          sale or advertisement of any merchandise whether or not any
25        person has in fact been misled, deceived or damaged thereby, is
          declared to be an unlawful practice.
26

27   Ariz. Rev. Stat. Ann. § 44-1522(A); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d
28   1119, 1122 (Ariz. 1974).

1  withheld from Mr. Henderson in jointly making the decision to accept the loan

2  modification/forbearance.

3       Under these circumstances, Mrs. Henderson has standing to assert a claim under the

4  Arizona Consumer Fraud Act as she had alleged that Defendant made "a misrepresentation,

5  or concealment, suppression or omission of any material fact with intent that ***others*** rely upon

6  such concealment, suppression or omission, in connection with the sale or advertisement of

7  any merchandise."  Ariz. Rev. Stat. Ann. § 44-1522(A) (emphasis added).  Mrs. Henderson

8  has demonstrated that Chase should have known that she would rely on the information and

9  that she did, indeed, rely on the information when jointly deciding with her husband that they

10 should agree to the loan modification/forbearance.

11      Likewise, Mrs. Henderson has standing to assert a claim for fraudulent

12 misrepresentation against Defendant.

13            One who makes a fraudulent misrepresentation is subject to
       liability **to the persons** or class of persons **whom he intends or**
14     **has reason to expect to act or to refrain from action in**
       **reliance upon the misrepresentation,** for pecuniary loss
15     suffered by them through their justifiable reliance in the type of
       transaction in which he intends or has reason to expect their
16     conduct to be influenced.

17 RESTATEMENT (SECOND) OF TORTS § 531 (emphasis added).  Again, Defendant allegedly

18 made a fraudulent misrepresentation to Mr. Henderson and intended or had reason to expect

19 (because it knew Mrs. Henderson's interest in the Property would be affected by such a

20 decision) that this would cause Mrs. Henderson to act in advising her husband to enter into

21 the forbearance/loan modification.  Further, Mrs. Henderson has alleged, as discussed more

22 fully below, that she suffered a pecuniary loss as a result of such justifiable reliance.  Under

23 these circumstances, Mrs. Henderson has standing to assert a claim for fraudulent

24 misrepresentation against Defendant.

25      Similarly, Mrs. Henderson has standing to assert a claim of negligent

26 misrepresentation against Defendant.  Under Arizona law, negligent misrepresentation is

27 defined as:

28            (1) One who, in the course of his business, profession or

employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) **by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it**; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction . . . .

*Mur-Ray Management Corp. v. Founders Title Co.*, 819 P.2d 1003, 1008-1009 (Ariz. Ct. App. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 552) (emphasis added). For the same reasons Mrs. Henderson has standing to assert a claim for fraudulent misrepresentation, she likewise has standing to assert a claim for negligent misrepresentation.

### ii.   Violations of the Fair Credit Reporting Act (Count III)

Defendant argues that Mrs. Henderson does not have standing to assert a claim for violations of the Fair Credit Reporting Act because her credit was unaffected by any reporting by Chase.  It is undisputed that Mrs. Henderson's personal credit rating was unaffected any reports made by Chase. *See* Doc. 135 at 8.  Mrs. Henderson argues, however, that her interests were adversely affected by the adverse reporting of Mr. Henderson's credit within the meaning of 15 U.S.C. § 1681a[2] because she was listed as an authorized user on one of Mr. Henderson's accounts. (Doc. 137-3 at Exhibit 14).  Mrs. Henderson argues that the account that she was an authorized user on was closed due to Chase's adverse reporting of Mr. Henderson's credit and, as a result, she lost access to $10,000 in credit.  (*Id.*).

The Ninth Circuit Court of Appeals has not directly addressed the issue of spousal

---

[2] The term 'consumer report' is defined as "any written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C.A. § 1681a(d)(1).

standing under the Fair Credit Reporting Act.  In the absence of guidance from the Court of Appeals, this Court agrees with various district and circuit courts that have found that a spouse may have standing for violations of the Fair Credit Reporting Act "when a credit report damages that party's individual credit worthiness."  *Williams v. Equifax Credit Information Services*, 892 F.Supp. 951, 954-955 (E.D. Mich. 1995); *Soghomonian v. U.S., 278 F.Supp.2d 1151, 1166 -1169 (E.D. Cal. 2003) vacated due to stipulation of parties by* No. Civ.F 99 CV 5773 SMS, 2005 WL 1972594, at *1 (E.D. Cal. June 20, 2005); *Koropoulos v. Credit Bur., Inc.* 734 F.2d 37 (D.C. Cir. 1984); *Barron v. Trans Union Corp.*, 82 F.Supp.2d 1288, 1297 (M.D. Ala. 2000) (holding that where wife showed that she suffered an initial injury based on false information in her husband's credit report, she had standing to assert a claim under the Fair Credit Reporting Act); *Washington v. CSC Credit Services, Inc*., 194 F.R.D. 244, 252 (E.D. La. 2000) (agreeing with rule stated by other courts that  "a wife has standing to bring suit against a consumer reporting agency for failure to follow reasonable procedures to assure the maximum possible accuracy of information in her husband's consumer report only where the release of inaccurate information in the husband's report negatively affected the wife's credit worthiness.") (internal citations omitted); *see also Spencer v. Spencer*, 52 Fed.Appx. 874, 875-876, 2002 WL 31685770, at *1 (9th Cir. 2002).

In this case, Plaintiffs' expert claims that Mrs. Henderson was denied access to $10,000 in credit based on the false reporting of Mr. Henderson's credit.  Defendant does not dispute that Mrs. Henderson was an authorized user on the account and that she no longer had access to the credit line after the false reporting.  If the jury finds that the credit line was reduced as a result of the false reporting of Mr. Henderson's credit, Mrs. Henderson would have a claim under the Fair Credit Reporting Act as a result of this injury.  *See Barron*, 82 F.Supp. at 1297n.1 (finding it "inconsequential" that "after Plaintiffs were denied joint credit," the wife, who was harmed by the false reporting of her husband's credit, "qualified for credit on her own.").  It would circumvent the legislative intent behind the Fair Credit Reporting Act to disallow Mrs. Henderson's claim, in the face of "the realities of shared expenses, shared liabilities, and in this case shared injury." *Conley v. TRW Credit Data*, 381

F.Supp. 473 (N.D. Ill. 1974).

Accordingly, the Court finds that, under the circumstances of this case, Mrs. Henderson has standing to assert a claim against Defendant under the Fair Credit Reporting Act.

**B.    Damages**

Defendant next argues that Mr. Henderson has asserted no damages because he seeks lost profits and damages of two limited liability companies, Arizona Legal Specialists, LLC and California Legal Specialists. Defendant argues that, because Arizona Legal Specialists LLC and California Legal Specialists are not parties to this lawsuit, no one can assert damages on their behalf. Further, Defendant argues that Mr. Henderson was merely an independent contractor of ALS and Mrs. Henderson was the sole member of both Arizona Legal Specialists and California Legal Specialists, so that, even if members could sue for damages sustained to the limited liability company, Mr. Henderson has not shown any damages.

Defendant next argues that Mr. Henderson's personal damages cannot be ascertained because Mr. and Mrs. Henderson co-mingled their personal and business finances and it is "impossible to separate any monetary losses suffered from Mr. Henderson from losses suffered from Mrs. Henderson or the businesses themselves." (Doc. 135 at 12). Finally, Defendant argues that, even if lost profits were recoverable by Mr. Henderson, they are too speculative.

In response, Plaintiffs argue that neither ALS or CLG were actually operated as limited liability companies because "all of [P]laintiffs' financial affairs were operated as a single financial whole." (Doc. 137 at 12). Plaintiffs did not observe corporate formalities, CLG and ALS did not file separate tax returns, but their gains and losses were reported as part of schedule C attached to the joint tax return filed by Plaintiffs. Further, although there were bank accounts maintained under the name of the companies, the taxpayer identification number associated with those accounts was that of Mr. Henderson. Further, the businesses were funded with a combination of community funds and the credit was obtained in Mr.

1   Henderson's name.  Although neither Mr. or Mrs. Henderson received a paycheck from the
2   business, any profits made by the businesses would have directly benefitted the marital
3   community in the form of reinvestment or by way of profits paid to Mr. and Mrs. Henderson.
4          Under Arizona law, "[a] member of a limited liability company, solely by reason of
5   being a member, is not a proper party to proceedings by or against a limited liability
6   company unless the object is to enforce a member's right against or liability to the limited
7   liability company or except as provided in this chapter."  Ariz. Rev. Stat. Ann. § 29-656.
8   Accordingly, only a limited liability company can assert damages that it incurred as a result
9   of Defendant's conduct.
10         It appears Plaintiffs are arguing that the Court should do something akin to "piercing
11  the corporate veil" of the LLC to allow them to assert the damages of CLG and ALS that
12  were allegedly caused by Defendant.  Plaintiff has cited to no authority or test that would
13  allow the Court to pierce the corporate veil in such a situation.  Further, in her declaration,
14  Mrs. Henderson states that ALS was dissolved and later organized as a California Limited
15  Liability Company. (Doc. 137-2 at ¶ 21).  Accordingly, it appears that the California Limited
16  Liability Company is the proper entity to assert any claims against Defendant on behalf of
17  CLG and ALS and Plaintiffs do not have standing to do so.
18         Nonetheless, Defendant has not attempted to brief to the Court which specific
19  damages asserted by Plaintiffs belong to CLG and ALS and which damages belong to
20  Plaintiffs. Rather, Defendant has generally asserted that the "majority of damages sought are
21  lost profits and lost opportunities of two limited liabilities companies," which must bring
22  their claims in their own names.  (Doc. 135 at 10).  This does not assist the Court in
23  determining that certain damages belong solely to CLG and ALS and should be excluded.
24  Plaintiffs' expert has provided a specific breakdown of damages suffered by Plaintiffs and
25  CLG and ALS.  (*See* Doc. 137-3 at Exhibit 13).  Accordingly, while the Court agrees that
26  only CLG and ALS can recover damages for injuries suffered solely by those entities, it is
27  a question of fact for the jury which damages were incurred solely by the limited liability
28  companies and which damages were incurred by Plaintiffs.

1      Further, Defendants argue that any damages incurred by Mr. and Mrs. Henderson are

2 too speculative.  Plaintiffs have provided the report of their expert, John R. Ulzheimer, who

3 quantifies the damages incurred by Plaintiffs.  Defendants have not shown that Mr.

4 Ulzheimer's opinion is not based on credible evidence and it is not this Court's function to

5 weigh the evidence.  Accordingly, if the jury finds in favor the Hendersons, the amount of

6 damages that they are entitled to is a question of fact for the jury.

7      Further, while Defendants attempt to argue that Mr. Henderson has no damages,

8 Defendants do not address why Mr. Henderson is not entitled to statutory damages as

9 provided for in the Fair Credit Reporting Act.  *See* 15 U.S.C.A. § 1681n.

10           **C.**    **Causation**

11      Defendant argues that the failure of ALS and CLG cannot be attributed to any actions

12 of Chase because Mrs. Henderson could have continued to operate the businesses by

13 obtaining credit in her own name or borrowing money from her parents and, thus, Plaintiffs

14 have not shown that any damages they sustained were incurred as a result of Chase's adverse

15 reporting .  In his report, Plaintiffs' expert claims that Plaintiffs sustained damages due to lost

16 access to capital.  The extent of those damages and the amount of those damages are

17 questions of fact for the jury.

18      Defendant also argues that Mr. Henderson has failed to show causation between any

19 actions of Chase and his alleged emotional distress.  Mr. Henderson has produced invoices

20 of three counselors[3] and testifies that he went to see the counselors based on Chase's negative

---

22      [3] In its Motion for Summary Judgment and its Reply in Support of its Motion for

23 Summary Judgment, Defendant takes conflicting positions as to whether Mr. Henderson submitted invoices documenting his visits to counselors.  *Compare* Doc. 135 at 13-14 ("Mr.

24 Henderson has presented invoices showing that he visited three counselors . . . .") *with* Doc. 143 at 5 ("In any event, Mr. Henderson has not submitted any billing statements or records

25 from a counselor or counseling agency.").  Because the argument that Mr. Henderson has not produced invoices from his counselors was first made in Defendant's reply, the Court will

26 not address this argument.  *See Smith v. Arizona*, No. CV 11-1437-PHX-JAT, 2012 WL

27 3108818, at *4 (D. Ariz. July 31, 2012) (stating that the Court will not address arguments

28 first raised in reply because it deprives the nonmoving party of the opportunity to respond.)

reporting of his credit information.  Mr. Henderson also claims that he has difficult sleeping and worries about the future because of Chases's actions.  (Doc. 137-1 at ¶ 38).  There is no question that "[t]he FCRA permits 'recovery for emotional distress and humiliation.'" *Drew v. Equifax Information Services, LLC*, __F.3d __,  2012 WL 3186110, at *6 (9th Cir. 2012) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).  Defendant argues that several other stressors in Mr. Henderson's life could have caused his emotional distress and he has presented no evidence that such distress was caused by Defendant's actions.  The Court finds that there is an issue of material fact as to whether Defendant caused Mr. Henderson's emotional distress.

Finally, Defendant argues that the Hendersons have failed to demonstrate that they are entitled to punitive damages under the Arizona Consumer Fraud Act.  Further, Defendant asserts that the only claim for which Plaintiffs sought punitive damages was the Arizona Consumer Fraud Act claim.  Plaintiff argues that it did not limit punitive damages to its Arizona Consumer Fraud Act claim.  The Amended Complaint establishes that Plaintiffs' request for punitive damages was not limited to its Arizona Consumer Fraud Act claim.

Accordingly, the Court will solely address Defendant's argument that Plaintiffs cannot seek punitive damages on their Arizona Consumer Fraud Act claim.  Plaintiffs have the burden of proving by clear and convincing evidence that Defendant acted with an "evil mind" in order to recover punitive damages under Arizona law. *See Nardelli v. Metropolitan Group Prop. and Casualty Ins. Co.*, 277 P.3d 789, 801 (Ariz. Ct. App. 2012).

In this case, Defendant has not disputed the facts presented that Chase fraudulently concealed information from Mr. Henderson to induce him to enter into a forbearance and then repeatedly lied to Mr. Henderson when he inquired as to whether his credit was affected and whether he was incurring late fees or damaging his credit.  Under these facts, the jury could find that the Hendersons are entitled to punitive damages on their Arizona Consumer Fraud Act claim.

---

(internal quotation and citation omitted).

### D.    Defendants' Objections

The Court will briefly address Defendant's objections to Plaintiffs' evidence.  The Court did not rely on the following exhibits submitted by Plaintiffs in deciding the Motion for Summary Judgment: (1) Exhibit 5, Excerpts from the Supplemental Report of the Fraud Examiner and CPA Time D. Tribe of Epps Forensic Consulting, PLLC," (2) Exhibit 18, a portion of an operating agreement, (3) Exhibit 19, Articles of Organization, (4) Exhibit 21, a statement from Vanessa Henderson's mother.  Because the Court did not consider this evidence, any objections to it are deemed moot without prejudice to such objections being re-raised at trial.  Finally, to the extent that Defendant requests that information be stricken from Plaintiffs' Response to the Motion for Summary Judgment, such request is denied.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (Doc. 135) is granted in part and denied in part as follows:

Mrs. Henderson does not have standing to assert a claim for defamation against Defendant Chase (Count II).  Mrs. Henderson does have standing to assert claims for Fraudulent Concealment (Count I); Violations of Arizona Revised Statutes section 44-1521(Count IV); Fraud (Count V); Negligent Misrepresentation (Count VIII); and Violations of the Fair Credit Reporting Act (Count III) against Defendant Chase.  Further, Plaintiffs cannot recover damages for claims properly belonging to ALS and CLG.  The Motion for Summary Judgment is denied in all other respects.

DATED this 11th day of September, 2012.

James A. Teilborg
United States District Judge